**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| **JANE DOE,**<br><br>               **Plaintiff,**<br><br>vs.<br><br>**T.T., II, and TORRI WILKINSON,**<br><br>               **Defendants.** | **MEMORANDUM DECISION**<br>**AND ORDER**<br><br>Case No. 2:24-CV-879-DAK-CMR<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Cecilia M. Romero |

This matter is before the court on Defendants T.T., II and Torri Wilkinson's Motion for Summary Judgment [ECF No. 29] and Plaintiff Jane Doe's Motion for Summary Judgment [ECF No. 33]. On July 16, 2026, the court held a hearing on the motions. At the hearing, Plaintiff was represented by Eric Stephenson, and Defendants were represented by W. Andrew McCullough. The court took the motions under advisement. After carefully considering the memoranda filed by the parties and the law and facts pertaining to the motions, the court issues the following Memorandum Decision and Order.

## BACKGROUND

Defendant T.T., II Inc. ("T.T.") is an escort service licensed as a "sexually oriented business" by Midvale City. Defendant Torri Wilkinson is the president of T.T. Plaintiff was licensed as an escort by Midvale City. She was designated as a "sexually oriented business employee" and obtained a separate license by the City. The City requires the person to make a written application, provide a criminal background check, and be at least 18 years old. Plaintiff submitted an application and was issued a license by Midvale. At the time, she was also licensed by another city as a semi-nude dancer.

When Plaintiff agreed to work as an escort in conjunction with Defendants, she signed an agreement indicating that her services as an escort would involve nudity in the presence of customers. Plaintiff signed several documents with Defendants outlining the terms of their business relationship, including: an independent contractor application; a Midvale City Sexually Oriented Business License; an affidavit as to conditions of association; a contractor letter of rules and regulations for conduct of escorts; a noncompetition and trade secrets agreement; and an agreement as to office rules.

As part of her intake process, the parties discussed that she would need to engage in some advertisement activity directed at attracting male customers and that this would also include nudity. Defendants maintain a website advertising their services and providing photographs of their escorts. The photographs are sexually suggestive but do not generally include nudity. Plaintiff declined to pose for a photo shoot but agreed to provide Defendants with photographs for use on the website and other advertisement platforms. Plaintiff provided photographs that included some nudity, but the nude photographs did not show her face. Defendants used the photographs Plaintiff provided to them in advertisements. Plaintiff also provided Defendants with some facial shots, but they agreed that they would not be displayed with photographs containing nudity.

In connection with her work as an escort for Defendants, Plaintiff used an assumed name. The photographs they used in advertising used that assumed name. Defendants did not use or provide information as to Plaintiff's actual name or identity.

As part of its advertising for its escorts, Defendants supplied photographs to certain websites featuring sexy, nude, or semi-nude models. One such website is Tryst.link. Plaintiff demonstrated that she approved of being featured on such sites by posing for a series of photographs holding up a sign referring to her stage name of "Lexxi," a Gmail address for reaching

2

her, and stating "I'm signing up for Tryst.link." A T.T. employee took the photograph prior to any posts on the site to show Plaintiff's willingness to make such posts. Defendants also refer to correspondence from Plaintiff acknowledging the Tryst posting.

In addition to the ads on Tryst.link, Defendants posted Plaintiff's ads on rubrankings.com, listcrawler.com, and skipthegames.com. Defendants contend that they were all posted with Plaintiff's permission and using photos she approved. A posting for skipthegames.com included five photos of Plaintiff in lingerie and topless, though none of them show her face. The post also shows answers to basic questions. Defendants state that they posted this with Plaintiff's permission.

Defendants claim that the decision to post Plaintiff's ad was her decision only. She shared the photos she said were permissible to send to clients privately and she shared the photos she said were permissible to post in her ads. Plaintiff does not claim that Defendants created ads for her without her permission. However, Plaintiff alleges that she was there was one posting including a series of photographs involving nudity that also included a photograph including her face. Plaintiff did not want photographs including her face posted with other nude photographs. She contacted Defendant about the posting and they remedied the situation. She claims that the erroneous posting was up for approximately two hours.

Defendants posted the ads between the time Plaintiff started working with them, approximately August 2024, and when she resigned in October 2024. After Plaintiff quit, Defendant erased her files. Defendants have a Tryst ad that Plaintiff ran herself while working for Defendant, which Plaintiff continued to use after she resigned with Defendants in October 2024.

Defendants acknowledge that other websites may have copied and pasted the ads from the other sites. However, Defendants stated that they had no control over that happening and Plaintiff

3

would have also known about that risk when she approved of the postings. Other sites could have also obtained the photographs from Plaintiff's personal Tryst ad.

Defendants claim that Plaintiff's consent was verbally on the phone and in text messages, which have been erased. She also consented with two verification photos with signs for Tryst.link. Defendants state that they complied with all of Plaintiff's requests, with the exception of the posting including her face that was posted for less than 2 hours. That posting was a mistake and they took it down. Plaintiff quit in October 2024, and she asked that the pictures be taken down. Defendant acknowledges that it took them several days to take them down but it was in their own business interest to have them removed timely as well.

Plaintiff sent a letter of resignation to Defendants in a text message in October 2024. By asking that the photographs be taken down in connection with her resignation, Defendants contend that she was acknowledging that she had previously agreed to the use of her images in connection with the business relationship. Any relationship that existed between Plaintiff and Defendants was as a result of Plaintiff's desire to provide escort services to Defendant's clients. Any use of the images Plaintiff voluntarily provided to Defendants was specifically for promoting Plaintiff as an escort. Plaintiff worked with Defendants on how those images were used. At no time during her employment, did Plaintiff tell them that she did not want her images used to promote her services.

## DISCUSSION

### Cross Motions for Summary Judgment

The parties bring cross motions for summary judgment that are essentially the mirror image of each other. Plaintiff brought the present lawsuit against Defendants alleging a violation of 15 U.S.C. § 6851 for disclosing intimate images of her on the internet without her consent. Under 15 U.S.C. § 6851(b)(1)(A), "Except as provided in paragraph (4), an individual whose

intimate visual depiction is disclosed . . . without the consent of the individual, where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure, may bring a civil action against that person." Paragraph (4) provides that "[a]n identifiable individual may not bring an action for relief under this section relating to" certain exceptions, such as "commercial pornographic content, unless that content was produced by force, fraud, misrepresentation, or coercion of the depicted individual," or "a disclosure reasonably intended to assist the identifiable individual." *Id.* § 6851(b)(4)(A), (D).

The statute defines several terms. "Consent" is defined to mean "an affirmative, conscious, and voluntary authorization made by the individual free from force, fraud, misrepresentation, or coercion." *Id.* § 6851(a)(2). "[T]he fact that the individual consented to the creation of the depiction shall not establish that the person consented to its distribution." *Id.* § 6851(b)(2)(A). In addition, "the fact that the individual disclosed the intimate visual depiction to someone else shall not establish that the person consented to the further disclosure of the intimate visual depiction by the person alleged to have violated paragraph (1)." *Id.* § 6851(b)(2)(B).

"Depicted individual" is defined as "an individual whose body appears in whole or in part in an intimate visual depiction and who is identifiable by virtue of the person's face, likeness, or other distinguishing characteristics, such as a unique birthmark or other recognizable feature, or from information displayed in connection with the visual depiction." *Id.* § 6851(a)(3). "Intimate visual depiction" is defined to mean a "visual depiction, as that term is defined in section 2256(5) of title 18, that depicts—(i) the uncovered genitals, pubic area, anus, or post-pubescent female nipple of an identifiable individual." *Id.* § 6851(a)(5).

In a civil action under this section, Plaintiff may recover the actual damages she sustained or $150,000 in liquidated damages, and the cost of the action, including reasonable attorney's fees.

5

*Id.* § 6851(b)(3)(A)(i).

As an initial matter, Plaintiff argues that all the background information regarding her business relationship with Defendants and referring to her as a licensed escort should be excluded because it is more prejudicial than probative under Federal Rule of Evidence 403. Plaintiff argues that the business relationship is irrelevant to the issues before the court. However, the business relationship with Defendants is central to the dispute between the parties. Section 6851 does not apply to "commercial pornographic content" or "a disclosure reasonably intended to assist the identifiable individual." *Id.* § 6851(b)(4)(A), (D). Both of these exceptions would preclude Plaintiff from bringing a case under § 6851(b). Moreover, the images are related to a licensed business and her involvement in legal adult entertainment is not inherently prejudicial.

Plaintiff does not dispute that she worked as an escort for Defendants and that the photographs were posted and shared with clients to advertise her services and promote her business. Defendants filed a detailed Declaration that they run a fully licensed escort service, they worked with Plaintiff as a properly licensed escort, Plaintiff provided them with photographs to be used in advertising her services as an escort on the internet which included her nipples, but those photographs do not include her face or other identifiable features. Defendants did not distribute any photographs of Plaintiff other than the ones she voluntarily provided to them for those purposes. Plaintiff affirmatively consented to internet advertising. There is a photograph of her holding a sign stating that she was joining Tryst.link, and she had her own personal Tryst.link ad with the same photographs. Plaintiff has not disputed these facts.

The parties' disputes regarding the disclosures boil down to Defendants' mistaken post that included a photograph depicting Plaintiff's face in a series of other photographs including nudity and to whether Defendants' timely removed her photographs when she resigned from working

6

with Defendants. When Plaintiff resigned, Defendants claim that they took down her photographs within a few days, which it claims is a reasonable amount of time. Plaintiff, however, claims that forty-eight hours would have been a reasonable amount of time.

The court does not think that the statute is intended to be applied in this manner. The statute specifically states that it does not apply to disclosures that fall within the enumerated exceptions. The photographs at issue fall within the exceptions for commercial pornographic content or a disclosure reasonably intended to assist the identifiable individual.

Plaintiff argues that Defendants were posting the photographs to assist their own business, but by doing so, they were assisting Plaintiff in her own business as well. The posts were mutually beneficial to both parties' businesses. Plaintiff continued to advertise her services on her own on at least one internet site, using the same photographs she had provided to Defendants. The photographs were images Plaintiff gave to Defendant for such purposes. They were not produced by fraud, force, misrepresentation, or coercion.

The mistaken disclosure of a photograph with Plaintiff's face was quickly rectified and the post was reasonably intended to assist Plaintiff's business. Defendants are not arguing that Plaintiff lost her right to consent to the photos distribution. However, they assert that the mistaken distribution that showed her face needs to be considered in the broader business arrangement the parties had. Defendants acknowledge that the agreement between the parties had limits. If they breached part of that agreement, that is not the same as Plaintiff's present claims.

Plaintiff also complains about the reposting of images on the internet but she agreed to have the photos put on the internet sites. She was aware of the risk that they would be copied. Plaintiff believes that Defendants are responsible for the photographs she gave Defendant being copied by other websites. But Plaintiff agreed to such advertisements and was using the same

photographs on her own personal internet advertisements. Defendant is no more responsible for the copying by other websites than Plaintiff is herself. This does not provide a basis for liability under § 6851.

While Plaintiff claims that Defendants' admissions satisfy the statutory elements as a matter of law and that this case presents admitted conduct that falls squarely within the conduct Congress sought to prevent, Congress wrote specific exceptions that apply to a situation like this where the parties are engaged in a mutually beneficial sexually oriented entertainment business relationship. Plaintiff voluntarily entered an agreement to make money off her images, and she voluntarily supplied those images to Defendants to promote her business venture. The statute was not intended to provide liquidated damages for any mistake made in such a business relationship. Defendants were assisting Plaintiff in her efforts to make money in her occupation as an escort and Section (4)(D) recognizes an exception for such assistance.

The court concludes that Section 6851(b) was not intended to apply to situations like the dispute Plaintiff brings before the court. The mistakes in posting or delay in removing the photographs may be a contractual dispute between the parties, but it is not a § 6851 claim. Plaintiff and Defendants were engaged in a mutually beneficial commercial venture. The dispute falls within the exceptions in § 6851(b)(4) and is exactly why the exceptions exist. Accordingly, the court grants Defendants' Motion for Summary Judgment and denied Plaintiff's Motion for Summary Judgment.

## CONCLUSION

Based on the above reasoning, Defendants T.T., II and Torri Wilkinson's Motion for Summary Judgment [ECF No. 29] is GRANTED and Plaintiff Jane Doe's Motion for Summary Judgment [ECF No. 33] is DENIED.

DATED this 6th day of August 2026.

BY THE COURT:

_____
DALE A. KIMBALL,
UNITED STATES DISTRICT JUDGE